A full roster today. Six cases per argument and six cases that will be heard per argument. So I won't waste any time. We'll start right off with United States v. McFadden. It is docket 23 and 1089. Counsel, please proceed when you're ready. Good morning. My name is Taiji. I represent Mr. McDermott. This appeal raises an important question, an important constitutional and evidentiary question about the improper expansion of the residual hearsay rule. Rule 807 permits hearsay not otherwise admissible under any other hearsay exception. If the hearsay is reliable and if the hearsay is more probative on the point than any other evidence, the proponent can, excuse me, it is more probative on the point for which it is offered than any other evidence the proponent can obtain through reasonable means. I want to focus this morning, Your Honors, on the more probative on the point prompt, what the 2019 Rules Committee called the necessity requirement. The point for which KW's hearsay statement was offered was to prove penetration. At 21 years old, KW in court, under oath, and before the defendant as well as the jury testified there was penetration. The government was dissatisfied with his testimony and argued that the Rule 807 hearsay statement ought to come in because KW's testimony was, quote, equivocal and, quote, reluctant. The court agreed. Your Honors, this analysis of 807 is wrong. It misconceives the entire point of the second prong of Rule 807. The rationale for Rule 807, that second prong, is to ensure the necessity of the hearsay because of the truth-seeking function's hostility toward out-of-court statements. There was no necessity here. KW literally testified on the point for which the hearsay statement was offered. Then is it harmless? It was not harmless, Your Honor. It wasn't harmless because, well, first of all, the government has not responded to our claim that it was, in fact, harmless. And it wasn't harmless because, as the government said in closing argument, this is a case about whom to believe. And permitting improper hearsay statements, unsworn statements, out-of-court statements, is effectively bolstering the government's case and that particular witness, contrary to the hearsay exception. The more important point, the point that basically establishes harmfulness, the larger point, is that writ large, permitting the expansion of Rule 807 in this way does what Tom suggested could, which is to swallow the entire hearsay rule. Counsel, if there was a type of case in which 807 has been more liberally interpreted, as you know, it is in cases where children are alleged victims, particularly of sexual crimes. And I think you submitted a 28-J letter noting our recent decision in Burgess, in which we again affirmed it was not of use of the discretion to allow these types of statements in cases that are charged, such as this one. So how would you distinguish our case law in Harrison and Burgess in this case? Yes, Judge Federico, the government submitted a 28-J letter on Burgess and we responded distinguishing Burgess. To answer the question, Your Honor, the most important distinction between Burgess and this case is that, and actually the distinction between this case and every case cited in Burgess, and frankly every case cited in the WB case from the Eighth Circuit, is that in this case you have a 21-year-old witness who was testifying about events that took place a 11 years old. In every one of the cases cited by Burgess or by WB, these are child victim witnesses. For example, in Burgess, the victim was 7 years old at the time of the offense, and 9 years old when she testified at trial. That is the typical case that WB and frankly Your Honor, if you, there are two points about Burgess that are actually important. I kind of talk about Burgess and WB in the same vein. Both of them talk about, first of all, the extraordinary exceptional nature of Rule 307, and then they make the point that Your Honor made, Judge Federico, about how child victim cases are different. But they're different because child victims are not a 21-year-old adult. So that's one point that is very important. The second point, also made by Burgess, Your Honor, is that Burgess said that it is important that the witness was present in court and was able to testify. That was significant for the Burgess court. And here you have the, in all those cases, you have witnesses who are not just equivocal or reluctant. That's not it. If you look at WB, you look at Burgess and the cases that are cited, these are cases in which the witness is testifying inconsistently with what he or she had previously said in, for example, a forensic interview. Were you contesting what this witness testified to? Well, whether there was penetration, Your Honor? Yeah. There was no specific cross-examination of KDW on the question of penetration. The defense was that it never happened. I'm sorry, what? The defense of the case was that a general denial that these acts... Wouldn't it be very pertinent to tie it back since it was years prior? It would be relevant to tie it back, Your Honor, but... You can't go back and be 11 again. No, you can't go back and be 11 again. However, the entire hearsay rule says that the judicial institution and the Constitution favor, supports, and wants in-court testimony, not hearsay testimony, Your Honor. And if, for example, we could always go back to the hearsay statement made by a child in a forensic interview, there would be no need for the hearsay rule at all. We can simply carve out an exception that says that in all child sex abuse cases, there will be no hearsay rule. But that's not what we have, Your Honor. And what we have is a rule, Rule 807, that specifically limits the type of hearsay that is permitted when the statement, the hearsay statement, is not permissible under any other hearsay rule. And the prong that I'm focusing on today is that one that actually asks the court to make a comparison between two types of statements, the hearsay statement and the in-court statement. And the rule says that the judge must determine whether one is more probative than the other. And in this case, Your Honor, A equals A, if there was nothing different substantively between KW's testimony live testimony in court, in front of the jury, and in front of the accuser, that there was penetration. If nothing's different from between that and his 2013 interview, when he also said, yes, there was penetration. Is the problem that the government didn't wait for the attack and then introduced the statement as a prior consistent statement, would that have been fine? That could have been fine, Your Honor, if it had done that. But also, we do have other rules on that. Well, back to harmlessness then. Yes. It sounds like one way or another this was coming in. You weren't going to just simply let the victim or witness testimony stand. You opposed that testimony. And you're saying that it could have come in as a prior consistent statement. Well, Your Honor, we have some counterfactuals here, because the statement came in before there was any cross-examination of KW. And so what would have happened, Your Honor, had the hearsay statement, 33 minutes of hearsay, not come in? I don't know the answer to that, Your Honor. And I suppose that the defense, when it learns that it's coming in over its objection, is running through quite a few strategic thoughts and tactical thoughts about how to respond in the face of this 33-minute hearsay. So back to your original answer to my question, the problem, as you said, the reason it was harmful is it bolstered the witness. Are you saying that it made the witness more believable for the jury? I think it certainly could have done that. And I don't see how you could avoid that inference, Your Honor. This was a lengthy interview, a video interview, of a child who was 12 years old at the time making statements about what happened. Of course, this statement was made in what you could call a sanitized room, sanitized of jurors, sanitized of a judge, sanitized of the oath. It is an 11-year-old child in a room with toys that are designed to elicit comfort. And that, Your Honor, is simply not a description of the witness stand. And at 21 years of age, KW certainly recognized the confronting, being confronted with the accused, who is watching his testimony and listening to his testimony. That's important for the judicial system, Your Honor. And I'd like to reserve the May it please the Court, Bishop Grewell on behalf of the United States. I want to make two points this morning, and I'll jump right to appropriateness right after I identify those two points. First, this Court's highly deferential standard of review when it comes to Rule 807 rulings, especially in the child sex context, requires affirming the admission of the video tape here of 11-year-old KW detailing the fed's abuse from two weeks earlier. And second, that video, along with the rest of the record, renders the Sains one line of roundabout vouching for the other boy, in this case, harmless. Before talking about appropriateness, let me just lay out the three ways that this Court is very deferential under Rule 807, because I think it matters for the appropriateness inquiry. First of all, it's an abuse of discretion on both the trustworthiness and the more appropriative prongs. And in the recent Burgess decision, Judge Ebell talked about how you're going to defer to the judge's finding on the more appropriative prong, because again, the judge can see the credibility of the witnesses and the like. I think that's particularly important here, where the judge bases his ruling not just on the words said by KW in his testimony, but also on the fact that he was reluctant, required prompting for his answers, and the message that that sent to the jury about whether he was being consistent in terms of whether he had been a penetrator or not. Second, this Court views the record in the light most favorable to the District Court's ruling. That means where there are alternative interpretations of the evidence, as long as there's a plausible interpretation that's in favor of the District Court's ruling, this Court needs to read the record that way. And finally, in terms of the District Court's ruling, you look at everything in the record that supports the ruling, but anything that would be contrary to the ruling, you only look at as of the time of the ruling was that particular evidence in there or not. Counsel, can I ask about your first point, where you say that the judge made a determination that was more probative because the Court found the witness was reluctant and required prompting. How does that go to probativeness when our cases tend to be witnesses who are unable to recall specific facts, so it's statement by statement as to whether or not the events happened. Here, I didn't see in the record where the Court made any findings that the witness was unable to speak to certain things. It was really the manner in which the witness spoke about things. So how does that probativeness analysis work when it's just the manner of speaking, not the content of the speech of the testimony? Yeah, I think it goes to this notion that it feeds into the justification. The fact that basically the witness here was inconsistent and unclear, the language that this Court adopted emerges from the Circuit's decision that we have testimony that's inconsistent and unclear, that's enough. And so the way in which the victim testified made it clear that these earlier statements where the victim said the exact opposite about being penetrated, in fact, McFadden had tried to penetrate, but basically had been unsuccessful and had pulled up his pants, was directly contrary to the later, yes, did he penetrate you? And so it left the jury with an unclear message about what had happened. It was inconsistent and unclear testimony, and I think that's what the other evidence was going to. So I guess it's not just the words, but the way that the witness said them. Beyond that, this Court can also affirm, because there was another reason for this evidence being more probative, that is the testimony about K.W. witnessing J.W.'s crotch being touched by McFadden. He was not able to testify to that at trial. He was not able to recall that. We noticed that up as evidence for our Rule 807, and even though the District Court didn't specifically rely upon that in admitting this in Knox, this Court noted that where you have an alternative theory of evidence under which the evidence would probably be admitted, it's not going to reverse on other grounds. That was properly admitted here. Also under Burgess, if you look at Footnote 7, this Court said it was not going to be an abuse of discretion where the Court there didn't even identify what the more probative fact was. So here, the fact that the District Court didn't identify the touching as another more probative fact doesn't mean that this Court can't rely on that, and it's plainly clear here that the witness wasn't at all able to recall that particular fact, but was in the video. I can talk about the circumstantial guarantees of trustworthiness on Rule 807, but I think the record is complete with those. Maybe just discuss the ones that it's a weaker case in this case than it was in Burgess. I guess I'm not sure which one this would be. Spontaneity. Let's start with that. Certainly. So I think the ones that they identify as being weaknesses would be the spontaneity and I suppose the disease comment, and then they identify, I guess, a motive to fabricate. First, the spontaneity. I think this Court has also recognized, cited other Courts that recognize when it's a child speaking, spontaneity is not as important. But again, this is a totality of the circumstances, as Burgess notes. So I think you have to look at all the stuff in favor, and the fact that you may have one or two things against, like spontaneity, is not going to undermine the circumstantial guarantees of trustworthiness. The disease comment, this is one of those where there are two alternative interpretations of that, and you have to adopt the one that's more favorable to the District Court's ruling. One interpretation is that this was part of the counselors and the parents somehow coaxing this boy into an admission that was false. Another interpretation is that he actually disclosed on his own, and they were now trying to explain why this man that they'd invited for Thanksgiving and Christmas dinner and let their child go on a trip with them would do this to him. And it was only one line amongst a bunch of otherwise child-appropriate language, such as talking about Mike touching his no-no and asked about touches that he didn't like. Right. As we go through and we compare, because it's a factual inquiry, what happened here, what happened in court, what happened during the interviews, if we say it doesn't measure up to Burgess, and that, in fact, there is error, did the government argue harmlessness? We have not argued harmlessness here. And what's the effect of that? Well, I actually think if you look at the video, it is a prejudicial video. That's part of the reason the same one line about you is not harmful. So I don't think this court, I mean, this court can do what it wants. If it finds it harmless, then it certainly could. But we have not argued harmless. I believe we've weighed that argument. Did the government jump the gun? Was it introducing its consistent prior statement before there was any attack on cross-examination? I don't think it needed to weigh here because it was, I think the record was already quite clear that, I mean, I don't think that they needed to cross-examine on penetration at all because the witness here had already been inconsistent on it. So the defense could have simply relied upon that in its closing arguments. He said one thing, he said he'd never been penetrated. Then he did say he was penetrated. There's no reason to believe that testimony. So I don't think that the government did jump the gun in these particular circumstances. If you had had, you know, if he had simply said, yes, I've been penetrated and was clear about that, then I think we might have different circumstances. And the fact that maybe he'd said, yes, hesitantly, wouldn't be enough on its own. But given the preceding testimony where he basically said the exact opposite, I think it was enough here. And again, it is a factual inquiry. But again, it's a factual inquiry under an abuser discretion standard. So if there's something in there to support the admission on those two prongs, I think there is here and I think it's met. On the motive to fabricate, there is no motive to fabricate here. The two they've identified, this revenge motive that somehow KW, when he's traveling back from Nebraska with his mom, says JW was abused. I wasn't and I'll do whatever I can to put McFadden away. We had testimony from Cheryl Young before that explained why a young boy would not want to disclose his own abuse, that it just happened. And it doesn't show that JW had already disclosed. What it showed is what the video says, that KW had actually witnessed JW being abused. And so I think that's the likewise, their other motion. Their other motive to fabricate is that the parents and the therapists somehow would have had something to get Mr. McFadden. There's nothing in the record like there was in Tome where the child, after a year wait from disclosure, wanted to be out of their father's custody. So I think the Rule 807 evidence was properly admitted here. It certainly wasn't abuse of discretion on the record for this court. Counsel, before you transition up to 807 in the first issue, how would you respond to Mr. G's argument that Burgess, Harrison, other cases can easily be distinguished because the age of the witness at the time of trial compared to those cases where it's still a child who the judge is evaluating to do the 807 analysis? Yeah, so I think part of that is also based on, again, we have Cheryl Young testifying below, that these events occurred when he was a child. And so the way that memory is going to be formed is certainly a factor. And in fact, the fact that we had to wait 10 years for him to be able to get to the stand in this particular case because of the way the state prosecution went below, they've been prosecuting the state, and then eventually his conviction is overturned on speedy trial grounds. That long wait combined with the way children form memories, I think actually weighs in favor of this being another Rule 807 category where you're going to have memory problems because this is a case that needs to go to trial in the same way that you're going to have memory problems. So I think that weighs in favor of our point here. Moreover, I would note in Harrison when this court says that the probative prong is not a rule of cash fire and rigidity, the Weinstein treatise that it cites notes that even cumulative evidence can be something that would come in under a probative prong when necessary. And so even if you just looked at this as the boy ultimately said he was penetrated, that doesn't mean that the court abuses discretion by finding more probative prong met here. Turning to the one line of vouching here, the case they really want to hit on in the reply briefs is to be the Jones case from 2023. So let me hit some of the distinctions because I think we talked a lot about Charlie in the briefing. First of all, the vouching in Jones was far more egregious. We had one line here. In that case, you had a mother who repeated over and over again about testimony about the credibility of her daughters, the victims, and credibility of the defendant, her husband, of three years. She said that she believed her girls. She didn't believe they would lie. She no longer believed her husband, who she trusted. She believed her girls would tell the truth. And again, she didn't believe they would lie. The jury plainly heard the message here, trust these witnesses. The same one line here was much more roundabout. Secondly, the mother in Jones was the very first witness. And so they had to set up for these witnesses before the jury had had a chance to assess the credibility. In this case, J.W. testified first. Then a whole night passed before the same had the one line of testimony. And so the jury had had a chance to assess J.W.'s credibility before the same here testified. Furthermore, the same had only met with J.W. once. In Jones, it's the mother of these girls, and she had also been the spouse of the defendant for three years. The jury was much more likely to take back a woman's testimony that she was a credibility barometer. And then a very important distinction, I think, from Jones is on Prong 3 of Plain Air in Jones, the court said, the government can't meet the standard because all of the evidence of abuse was vouched for. That isn't the case here. K.W. was never vouched for. His testimony was unvouched for testimony, and he also corroborated J.W.'s testimony with, well, in particular, the video showing that he had witnessed J.W.'s abuse. And that video was not vouched for. It provides, I think, clear, detailed, and powerful testimony of the abuse in this particular case. I want to make one factual, I guess two factual clarifications. One, they note throughout, they're still fighting whether J.W. alleged first or not. I think you can just look to their closing argument, Volume 6, 102, 103. They actually made the exact opposite argument. They tried to argue that J.W. made up the abuse because he heard K.W.'s allegations. So, it's a little odd that they've changed that position on appeal. Secondly, in their reply brief, Footnote 2, they say that during they were heard from two boys who recanted, they cite page 52 of the transcript of some below Volume 2 of Record on Appeal. I think they're actually referring to page 56 of the volume of the Record on Appeal, 52 is the transcript page. That's I.S. and E.M.'s testimony, the allegations of I.S. and E.M. I.S. never recanted. He stood by his testimony. He simply avoided summons for the trial here. And E.S. and E.M. did recant, but what he recanted was his denial of abuse. He came back a week later and told Detective Prescott, yes, I had been abused, and we wanted to introduce that as 414 evidence, the fact that he had been anally penetrated near the Gunnison River, and they objected to that. They didn't want either I.S. or E.M.'s testimony to come in. So the notion that somehow that would have helped them in front of the jury simply isn't the case. Detective Prescott didn't vouch. I think that's clear under Brooks and Jones. What you can't do is say somebody's telling the truth. You can certainly give reasons to believe that they're telling the truth, motives that they have. Jones says that at 707. Unless the Court has any questions on the 2018 audio tape, I'll quickly address the sentencing enhancement here. This is an enhancement that punishes using your influence to get a minor to go along with a sex act. I think the whole notion of voluntariness here, the question is really, did the child engage in a sex act when they're sort of passively submitting to that sex act? I think that's really what the dispute is about here. And I would direct this Court, I can file 28J if the Court would like, but there's a case out of the Second Circuit, ASUBA 67F456, discussing statutory language in 18 U.S.C. 2251A that's very similar about engaging in a sex act, says that a passive acquiescence can qualify. That makes sense in the light of a guideline that is about dealing with a power dynamic between adults and minors. If you read it the opposite way, that the child has to want to engage in a sex act, that's only going to protect, it will not protect the least vulnerable. With that, I'm out of time. I'm going to ask the Court to adjourn. Thank you. Thank you, counsel. I want to address a point that Judge Federico, you raised, and a statement the government made. The government said that the judge, the trial judge, could see the credibility of the witness, and Judge Federico, you were talking about how do you distinguish between the manner of speaking and the substance of what the witness is saying. Both of these, both the government statement and Judge Federico, your question bear on the issue of credibility. And credibility is not an 807 consideration. The consideration of the second prong is, as I discussed earlier, a comparison between the hearsay statement and the trial testimony, whether one is more probative than the other. And as I say, they were the same, so one could not have been more probative than the other. There was, on the record, the government and the trial judge, prior to the reluctance and equivocation. Your Honor, reluctance and equivocation are not remarkable. We see every day in court witnesses who are reluctant and witnesses who are equivocal. That alone is not a basis to meet the second prong of Rule 807. That is a credibility question, and the reluctance and equivocation are resolved by the court, or excuse me, by the lawyers. And in this case, reluctance and equivocation was overcome by the leading question from the prosecution. Was there, in fact, penetration? Answer, yes. That ends, Your Honors, the Rule 807 inquiry. On the question of the standard of review on this, yes, it's abusive discretion. But, Your Honors, under Burgess and Tome, we know that there is an abusive discretion if the judge makes an error of law. In this case, the error of law is the judge's understanding of whether or not the hearsay statement was more probative on the point for which it was offered than the trial testimony. And it believed, she believed, that if there is equivocation or reluctance of the witness, that satisfies the more probative on the point prong. That's just Your Honors. And I see that my time is up. Thank you for listening to my presentation. Thank you, counsel, for your arguments. The case is submitted and